IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TITO JAY BRYANT,<br><br>  Plaintiff,<br><br>  v.<br><br>RONALD J. HARRIS, d/b/a RAINBOW SELF STORAGE, KIM SANTSCHE, and DOES ONE to FIFTY, inclusive,<br><br>  Defendants.<br>_____/ | No. C 13-02068 WHA<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; AND DENYING EVIDENTIARY OBJECTIONS AS MOOT** |

  Beginning in 2009, plaintiff Tito Jay Bryant rented a storage unit from defendant Rainbow Self Storage. Defendants Ronald J. Harris and Kim Santsche are Rainbow's sole owner and general manager, respectively. Among other items, plaintiff placed bicycles in his storage unit. There is no indication, at least on this record, that plaintiff used his storage unit in any unlawful or inappropriate way. However, plaintiff changed mailing addresses by July 2012, and defendants legitimately suspended plaintiff's access to his storage unit as a way to direct him to the front office so that he could update his mailing address for billing and contact purposes.

  As a result, plaintiff went to his storage unit, could not get into it, and then went to Rainbow's front office on November 2, 2012, to update his mailing address. After "at least an hour," defendants restored his access (Mitchell Exh. A at 34:25–35:5). At no time did defendants terminate plaintiff's rental agreement with them. So far, race had nothing to do with the matter at hand.

1    Race came in as follows. On at least two prior occasions, Rainbow's personnel noticed
2 that plaintiff had accessed his storage unit at around the same time that another customer
3 accessed his own storage unit. Defendants had been investigating the other customer's
4 suspicious use of his storage unit. Both plaintiff and this other customer were (and are) African
5 American.

6    For the sake of argument, this order presumes that an additional motive by defendants in
7 temporarily suspending plaintiff's access to his storage unit was to force plaintiff to come to
8 Rainbow's front office so that he could be quizzed, briefly as it turned out, about his knowledge
9 of the other customer who was under investigation. This order further presupposes that
10 defendants did so because (1) both plaintiff and the other customer under investigation are
11 African American, and (2) there had been at least two occasions in which their access to their
12 storage units coincided.

13    Again, after his conversation with Rainbow's personnel on November 2, 2012, plaintiff's
14 access to his storage unit was promptly restored and was not interfered with thereafter.
15 Defendants never closed plaintiff's account. Plaintiff was the one who terminated the
16 relationship and then brought suit. Defendants now move for summary judgment on his claims
17 under Section 1982 of Title 42 of the United States Code and California's Unruh Civil Rights
18 Act.

19    Following full briefing and oral argument, as well as supplemental briefing from both
20 sides, this order holds that the foregoing conduct does not give rise to a Section 1982 claim.
21 This order fully credits plaintiff's own testimony as to what occurred (Singleton Exh. F at
22 21:19–22:3) (emphasis added):

> Q. And do you remember what was said in the conversation regarding your lockout?
>
> A. One — one of the ladies asked me if I knew a guy named Michael something, and I said no.
>
> Q. Okay. Do you remember anything else that was said in the conversation?
>
> A. Well, they — *they said something was being — something was being like investigated.* I don't know

2

> what they meant by — I don't want to take it personal, you know.
>
> I was a little frustrated because I was like, "What does it got to do with me?" That was when — I wanted to get to my babies. I wanted to get to my bikes.
>
> \*          \*          \*
>
> She told me it would be open soon after *they look into what's going on*, and I was — *I didn't understand what was going on* . . . .
>
> \*          \*          \*
>
> She asked me again about a guy named Michael, and asked me why I checked — she said me and Michael checked in and out at the same time of like — so like once again, you know, I don't know who Michael is. I didn't know what she was talking about.

There is no decision by our court of appeals on point under Section 1982. The closest analogous authority is *Manatt v. Bank of America*, 339 F.3d 792, 797 (9th Cir. 2003). There, the plaintiff brought a hostile work environment claim under Section 1981, arguing that racially insensitive comments at her workplace had altered the conditions of her employment. As examples, she pointed to her co-workers and supervisor's remarks, which sometimes used the phrase, "China man," as well as two instances in which her coworkers either ridiculed her mispronunciation of a word or pulled their eyes back with their fingers. Our court of appeals held that "this conduct was neither severe nor pervasive enough to alter the conditions of [the plaintiff's] employment," emphasizing that although regrettable, those examples had occurred over a span of two-and-a-half years and generally fell into the non-actionable category of "simple teasing" and "offhand comments." *Id.* at 798, 804. Plaintiff here has shown even less, pointing only to a few questions regarding "Michael."

Plaintiff responds with "important guidance" from *Burlington Northern v. White*, 548 U.S. 53, 67–69 (2006). In discussing an anti-retaliation claim under Title VII, *Burlington* stated (internal citations omitted) (emphasis added):

> In our view, a plaintiff must show that a reasonable employee would have found the challenged action *materially adverse*, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination." *We speak of material adversity because we*

3

> *believe it is important to separate significant from trivial harms.* Title VII, we have said, does not set forth "a general civility code for the American workplace."
>
>     *    *    *
>
> An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.
>
>     *    *    *
>
> We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."

Plaintiff urges that the Court employ a standard similar to the one in *Burlington*, so that "[t]he court should look to the *materiality of the adverse*, *discriminatory comments and conduct*" (Supp. Br. 3) (emphasis added).

   This order does so now, and finds that the few questions asked of plaintiff were too insubstantial to have interfered with his property rights under Section 1982. Plaintiff had the same locker contract as whites had. He was never denied a locker. He was required to go to the front office to update his address, but so far as this record shows, all customers regardless of race would have been required to do so when their addresses changed. The way this was accomplished was to briefly lock him out of his storage unit as a way to bring him to the front office, but so far as this record shows, all customers regardless of race could have been drawn to the front office for this purpose when their addresses changed. The most that a reasonable jury could make of this record in favor of plaintiff on the race issue is that, in addition to updating his address, he was singled out on account of his race for questioning about another customer of the same race whom management suspected of inappropriate activity. These questions were not directed to white customers similarly situated. Nevertheless, while this brief episode in the front office may well have been insensitive by modern norms of ordinary behavior, it was not a sufficient burden, under *Manatt* and *Burlington,* on the exercise of equal property rights to support a Section 1982 lawsuit for damages.

4

Given that plaintiff has not opposed summary judgment on his remaining claims, the motion for summary judgment is **GRANTED**. Furthermore, because this order does not reach the contested parts of the record, defendants' evidentiary objections are **DENIED AS MOOT**. Judgment will be entered for defendants.

**IT IS SO ORDERED.**

Dated: June 25, 2014. 

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE